**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

**v.**

**Paul Vince MAURELLO, Defendant–Appellee.**

No. 95CA0901.

Colorado Court of Appeals, Div. I.

Jan. 9, 1997.

G.F. Sandstrom, District Attorney, Karrick A. Burrows, Deputy District Attorney, Pueblo, for Plaintiff–Appellant.

David F. Vela, Colorado State Public Defender, Robin Desmond, Deputy State Public Defender, Denver, for Defendant–Appellee.

Opinion by Judge ROY.

The People appeal an order dismissing criminal charges against defendant, Paul Vince Maurello, for possession of marihuana with intent to distribute and possession of more than eight ounces of marihuana. The trial court concluded that the Colorado Controlled Substance Tax (Tax), § 39–28.7–101, et seq., C.R.S. (1986 Repl.Vol. 16B) (repealed effective March 26, 1996; Colo. Sess. Laws 1996, ch. 139 at 135) was, as of the time of its imposition, a penalty for double jeopardy purposes and that, therefore, prosecution of the criminal charges could not be pursued. We agree and therefore affirm.

Following defendant's arrest and the filing of criminal charges, the arresting officers, acting pursuant to the requirements of § 39–28.7–106, C.R.S. (1986 Repl.Vol. 16B), notified the Department of Revenue (Department) that 32.1 ounces of marihuana had been seized from defendant.

Following the notification, the Department imposed a tax of $3,210, based on the applicable tax rate of $100 per ounce, plus a penalty of $9,630 (three times the tax) for failing to register and voluntarily pay the Tax as required by the statute. The Department properly notified defendant of the amount due and thirty days following final determination judgment was entered against defendant for the tax and penalty. The Department then commenced the collections process.

Thereafter, the trial court granted defendant's motion to dismiss the criminal charges on the ground that jeopardy attached to the tax proceeding pursuant to the Fifth Amendment and Colo. Const. art. II, § 18. The sole issue on appeal is whether imposition of the Tax implicates double jeopardy, thereby prohibiting the subsequent criminal prosecution.

The double jeopardy clause protects against multiple prosecutions and punishments for the same crime. Under certain circumstances, a civil penalty may rise to the level of a "punishment" for double jeopardy

clause purposes. *Deutschendorf v. People,* 920 P.2d 53 (Colo.1996). In this instance, the crime is the possession of marihuana with intent to distribute.

In *Department of Revenue v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), the United States Supreme Court looked at the characteristics of a similar Montana tax and held the statute triggered double jeopardy when the state attempted to impose the tax on a person already convicted of criminal possession.

The Supreme Court relied primarily on two "unusual features" of the Montana tax to conclude that it constituted a penalty for double jeopardy purposes. The first unusual feature was that the statute imposed liability only upon arrest, as it, like Colorado's statute, required law enforcement personnel to report seizure of any drugs to the state revenue department. The second unusual feature of the statute was that it, like Colorado's, was a property tax, assessed after the seizure of the drugs, making the taxpayer liable for a tax on property he or she no longer possessed. Both the Montana and the Colorado statutes were a tax on possession; neither expressly denominated the tax as a property tax; and both taxed seized drugs at a rate that is not related to value.

The Supreme Court in *United States v. Sanchez,* 340 U.S. 42, 71 S.Ct. 108, 95 L.Ed. 47 (1950), had previously concluded that the federal Marihuana Tax Act, 26 U.S.C. § 2590(a)(2) (1940), did not constitute a punishment for double jeopardy purposes because it permitted the taxpayer to register and pay the tax without arrest, though the tax rate increased significantly after arrest and seizure.

The now repealed Colorado Tax statute defined "marihuana" as a substance that is "illegally held, possessed, transported, sold, or offered to be sold in violation of the laws of this state." Section 39–28.7–101, C.R.S. (1994 Repl.Vol. 16B). No tax was imposed on the legal possession of marihuana. Section 39–28.7–108, C.R.S. (1994 Repl.Vol. 16B). A person desiring to possess marihuana was first required to purchase a tax stamp from the Department and affix it to the package of marihuana, and the Department was re-

quired to maintain accurate records of tax stamp sales. Section 39–28.7–103, C.R.S. (1994 Repl.Vol. 16B).

A person found in possession of marihuana which failed to display a tax stamp was liable for the Tax and a penalty equal to three times the Tax. Section 39–28.7–107, C.R.S. (1994 Repl.Vol. 16B). Law enforcement officials are required to report any seizure of sixteen ounces or more of marihuana to the Department within seventy-two hours of filing the criminal case, apparently without regard to whether the Tax had been paid and the tax stamps affixed. Section 39–28.7–106, C.R.S. (1994 Repl.Vol. 16B).

The Tax applied with different rate structures to the illegal possession of controlled substances other than marihuana. *See* § 39–28.7–101(1), C.R.S. (1994 Repl.Vol. 16B).

Seeking to avoid the implications of the *Kurth Ranch* holding, the People argue that because defendant failed to offer evidence of the value of the marihuana seized, he cannot challenge the Tax as a penalty. They assert that in *Kurth Ranch* the Supreme Court concluded the Montana tax was punitive because the final tax assessed was eight times the market value of the marihuana. We disagree.

In *Kurth Ranch,* the Supreme Court emphasized that neither a high tax rate nor a deterrent intent of the legislature is dispositive of the penalty issue. The Court noted that these characteristics gave the tax a punitive character. In addition, the Tax here was not based on value. Therefore, in our view, the failure of defendant to introduce evidence of the value of the marihuana seized is not fatal to his challenge.

The People next argue the Tax was similar to the federal tax approved in *United States v. Sanchez, supra,* in that it provided that the taxpayer may register, purchase the tax stamps, and affix the tax stamps to the package of marihuana and, therefore, the imposition of the Tax was not conditioned on arrest. We are not persuaded.

Applying the People's analysis, appellate courts in four states that have reviewed their drug tax subsequent to *Department of Reve-*

nue v. Kurth Ranch, supra, have concluded that the tax does not constitute a penalty. *Covelli v. Commissioner of Revenue Services*, 235 Conn. 539, 668 A.2d 699 (1995); *State v. Gulledge*, 257 Kan. 915, 896 P.2d 378 (1995); *State v. Stubblefield*, 249 Neb. 436, 543 N.W.2d 743 (1996); *State v. Ballenger*, 123 N.C.App. 179, 472 S.E.2d 572 (1996).

However, these cases are distinguishable, as the statutes in question there contained express provisions that allowed persons to purchase a tax stamp anonymously and that prohibited the use of any of the tax records in subsequent criminal proceedings. Our statute did not provide for any anonymity or limitation on the use of the records as evidence in subsequent criminal proceedings. Indeed, our statute expressly required the Department to maintain accurate records of all tax stamps sold. Section 39–28.7–103.

The Supreme Court noted in *Department of Revenue v. Kurth Ranch, supra*, 511 U.S. at 778, 114 S.Ct. at 1945, 128 L.Ed.2d at 778, that a "statute imposing a tax on unlawful conduct may be invalid because its reporting requirements compel taxpayers to incriminate themselves." *See also Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) (payment of federal tax on wagering created real and appreciable hazard of self-incrimination).

While the constitutionality of the Tax on self-incrimination grounds is not before us, we conclude that, as a practical matter, few would avail themselves of the opportunity to pay the Tax voluntarily under these circumstances. Section 39–28.7–108 expressly exempted from the Tax any person in lawful possession. Since the class of persons subject to the Tax is comprised only of those who illegally possess, we find it highly implausible that such persons would purposefully expose themselves to criminal liability by voluntarily paying the Tax and affixing the tax stamp to their illegally possessed marihuana.

The existence of the voluntary payment option is at best illusory and does not, in our view, make the post-arrest imposition of the Tax any less a penalty for double jeopardy purposes. As the trial court stated, "the tax realistically would only follow an arrest of an individual." (emphasis in original)

We note that other courts have reached the same conclusion under the same or similar conditions. *Wilson v. Department of Revenue*, 169 Ill.2d 306, 214 Ill.Dec. 849, 662 N.E.2d 415 (1996) (statute applied only to dealers); *Bryant v. State*, 660 N.E.2d 290 (Ind.1995); *Ward v. State*, 915 S.W.2d 941 (Tex.App.1996).

We are aware, however, that the contrary conclusion has been reached by others, but we are not persuaded by their reasoning. *See State v. Lange*, 531 N.W.2d 108 (Iowa 1995); *McMullin v. South Carolina Department of Revenue & Taxation*, 469 S.E.2d 600 (S.C.1996); *Milner v. State*, 658 So.2d 500 (Ala.Civ.App.1994). The Oklahoma tax was found not to implicate double jeopardy because it was imposed in the criminal proceedings. *White v. State*, 900 P.2d 982 (Okla. Crim.App.1995).

We hold that the former Colorado Controlled Substance Tax constituted a penalty which triggered double jeopardy with respect to the subsequent prosecution of a defendant for a criminal offense involving the possession of the marihuana taxed.

Order affirmed.

METZGER and HUME, JJ., concur.