IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1023

Filed: 20 October 2020

Wake County, Nos. 99 CRS 17681-83

STATE OF NORTH CAROLINA

v.

WILLIAM LAMONTE QUICK

Appeal by Defendant from Judgments entered 19 April 2000 by Judge Henry W. Hight, Jr., in Wake County Superior Court. Heard in the Court of Appeals 26 August 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Kristin J. Uicker, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Katherine Jane Allen, for defendant-appellant.*

HAMPSON, Judge.

William Lamonte Quick (Defendant) appeals from Judgments entered on 19 April 2000 upon his conviction of Felony Possession of Cocaine, Possession of a Firearm by a Felon, Possession of a Weapon on School Property, and Misdemeanor Resisting a Public Officer, Second Degree Trespass, and Carrying a Concealed Weapon. The sole issue raised by Defendant on direct appeal from these convictions is whether he was deprived of a right to a speedy appeal and effective assistance of appellate counsel during the nineteen years it took for this appeal to be docketed in

this Court because his prior appointed appellate counsel did not take action to timely prosecute the appeal. The State has filed a Motion requesting, in part, this Court dismiss Defendant's appeal without prejudice to his right to seek appropriate post-conviction relief on this issue in the trial court. Because the Record before us is insufficient for us to evaluate Defendant's claims on direct appeal, we allow the State's Motion and dismiss Defendant's appeal without prejudice to his right to seek post-conviction relief. [1]

## **Factual and Procedural Background**

The Record before us tends to show the following:

On 21 January 1999, a Wake County Grand Jury indicted Defendant for Possession with Intent to Sell and Deliver Cocaine, Possession of a Firearm by a Felon, Resisting a Public Officer, Possession of a Firearm on School Property, Trespass, and Carrying a Concealed Firearm. At some point before trial, a Competency Hearing was held regarding Defendant's ability to stand trial. The Record does not contain any transcript of Defendant's Pretrial Competency Hearing.

Defendant's case came to trial in Wake County Superior Court on 18 April 2000. At trial, the State presented the testimony of Raleigh Police Officer Richard

---

[1] The State, as part of its Motion, originally requested this Court also compel Defendant to produce additional transcripts from a prior appeal arising from different charges against Defendant. Defendant produced the additional transcripts in responding to the State's Motion. The State filed a Motion to Withdraw the portion of its Motion to Dismiss asking this Court to order Defendant to produce additional transcripts. We grant the State's Motion to Withdraw this portion of its Motion to Dismiss.

Hoffman (Officer Hoffman). Officer Hoffman testified that, on 2 March 1999, he and his partner were patrolling the area around Birch Wood Apartments. The officers saw a group of four men in a courtyard where police had received complaints of drug activity. The officers approached the men to speak with them. Two of the men stopped, but Defendant ran.

Officer Hoffman chased Defendant through private yards and an elementary school's grounds. During the chase, Officer Hoffman testified he saw Defendant remove a jacket and throw it onto the ground. Defendant then tried to hail a taxi cab, but Officer Hoffman was able to catch up and grab Defendant before he could escape in the cab. Shortly after arresting Defendant, Officer Hoffman retrieved the jacket he said he had seen Defendant discard. Officer Hoffman testified that he found a silver .380-caliber handgun, loaded with six rounds, and 3.0 grams of cocaine in the jacket.

After the State and Defendant presented evidence, the jury found Defendant guilty of all charges—with the exception of Possession of Cocaine with Intent to Sell or Deliver on which the jury returned a guilty verdict on the lesser included offense of Possession of Cocaine. The trial court sentenced him to consecutive prison terms of 8-10 months for Possession of Cocaine, 20-24 months for Possession of a Firearm by a Felon, and 8-10 months for the consolidated misdemeanor charges. Defendant gave

oral Notice of Appeal in open court. The trial court appointed the Appellate Defender as appellate counsel with trial counsel, Mr. Graham, as an alternate.

On 25 April 2000, the Appellate Defender declined appointment and served notice to Mr. Graham that he was responsible for Defendant's appeal. On 9 July 2002, Mr. Graham moved to withdraw as Defendant's appellate counsel and to appoint Mr. Lemuel Hinton in his place. The Motion to Withdraw was allowed the same day.

Years passed with nothing being done to process Defendant's appeal until December 2018 when Defendant contacted Prisoner Legal Services, Mr. Hinton, and the Officer of the Appellate Defender regarding the status of his appeal. On 29 April 2019, Prisoner Legal Services filed a Motion for Reappointment of Legal Counsel. Attached to this Motion was an affidavit from Mr. Hinton in which he stated that he was initially unaware of his appointment in 2002. Mr. Hinton also stated he received copies of the trial transcripts in this case, but could not recall when or how he received them.

Ultimately, Mr. Hinton realized, at some point, he was appointed to represent Defendant on appeal in this matter, but "mistakenly allowed the time to lapse for preparing the appeal." On 21 May 2019, the Wake County Superior Court appointed the Appellate Defender to represent Defendant in this appeal. This Court entered Orders to deem Defendant's appellate filings in this case timely and to clarify that

the appeal would proceed under the North Carolina Rules of Appellate Procedure in effect as of 1 January 2019.

## Issue

The dispositive issue is whether the Record before us is sufficient for this Court to review Defendant's Speedy Appeal and Ineffective Assistance of Appellate Counsel claims on direct appellate review.

## Analysis

We review alleged violations of constitutional rights de novo. *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009). For speedy appeal claims, any "undue delay in processing an appeal *may* rise to the level of a due process violation." *State v. China*, 150 N.C. App. 469, 473, 564 S.E.2d 64, 68 (2002) (citation and quotation marks omitted). In determining whether a defendant's constitutional due process rights have been violated by delays in processing the appeal, we consider the following factors: "(1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of his right to a speedy appeal; and (4) any prejudice to defendant." *Id.* (citing *State v. Hammonds*, 141 N.C. App. 152, 158, 541 S.E.2d 166, 172 (2000)). No one factor is dispositive; the factors are related and are considered along with other relevant circumstances. *Id.*

Here, the nineteen-year delay in processing Defendant's appeal is more than "lengthy and sufficient" to warrant consideration of the remaining *China* factors. *Id.*

at 474, 564 S.E.2d at 68 (six-year delay in "processing defendant's appeal is lengthy and sufficient to examine the remaining factors"). Also, as in *China*, Defendant contends the reason for the delay in his appeal was the ineffective assistance of his prior-appointed appellate counsel.

By his own admission, Mr. Hinton, Defendant's prior appellate counsel, became aware he was appointed as Defendant's appellate counsel, but he "mistakenly allowed the time to lapse for preparing the appeal." Despite the delivery, at some point, of transcripts of Defendant's trial, no further action was taken by appointed appellate counsel in the appeal for nineteen years. Indeed, the facts surrounding the length of the delay and reason why the appeal was so delayed appear relatively well-established on this Record. It is the remaining two factors—Defendant's assertion of his right to a speedy appeal and the resulting prejudice, if any, from the delay—that, in addition to any other relevant circumstances, require additional evidentiary development.

For instance, in *China*, we observed the defendant's six-year silence in asserting his right to appeal was "deafening" and, although not dispositive, weighed heavily against his due process claims. *Id.* at 474-75, 564 S.E.2d at 68. Here, Defendant did not inquire about his appeal for approximately eighteen years, which absent other facts, would weigh against his current assertion of a right to a speedy appeal. However, on appeal, Defendant argues his "mental illness, developmental

disabilities, and neurological disorders" prevented him from asserting his right to a speedy appeal during this time period. The Record before us contains a Pretrial Competency Report outlining conflicting findings as to Defendant's mental illness, developmental disabilities, and neurological disorders. The Record contains no transcript of the Competency Hearing itself. Defendant points to a number of references in the Record to Defendant's mental illness including diagnosis of bipolar disorder, medications, and pretrial suicide attempts.

Defendant was, however, found competent to stand trial and assist in his defense at the time of the original trial. The Record, at this stage, is underdeveloped as to what, if any, impact Defendant's alleged mental illness, developmental disabilities, and/or neurological disorders had during the time his appeal was allowed to languish and on his ability to inquire as to the status of his appeal.

Likewise, Defendant contends he suffered prejudice resulting from the passage of time. For example, Defendant contends even though there are transcripts of the evidence presented at his trial there are no transcripts of jury selection, opening statements, closing arguments, the competency hearing, or the jury instructions. As such, Defendant argues appellate counsel cannot effectively identify, isolate, and brief issues for appeal, and further, that this constitutes the "most serious" form of prejudice.

Defendant's counsel included in the Record a number of emails with court reporters and record-keepers indicating there are likely no "notes, tapes, or discs" from the reporters regarding the unreported portions. Defendant also asserts "some individuals associated with the proceedings are unavailable for purposes of record reconstruction assistance." Defendant points out one of the reporters is deceased, and Defendant contends his trial counsel, Mr. Graham, joined the Attorney General's office and is "aligned with the party-opponent and thus has a conflict which prohibits him from engaging in the reconstruction process

Again, however, Defendant's arguments would require us, in the first instance, to make factual determinations not only as to the veracity of his claims, but also whether and what prejudice resulted in his ability to reconstruct the Record or to identify potential issues on appeal that were lost because of the failure to reconstruct the Record in its entirety.

Defendant has not filed a Motion for Appropriate Relief in this Court pursuant to N.C. Gen. Stat. § 15A-1418, which might provide an avenue to simply remand the matter to the trial court for an initial determination. Instead, Defendant urges us to resolve these issues on direct appeal. This Court is generally not a fact-finding court, and we are unable to resolve these questions of fact on the Record before us. *See Johnston v. State*, 224 N.C. App. 282, 302, 735 S.E.2d 859, 873 (2012). Rather, this case is analogous to claims of ineffective assistance of counsel made on direct appeal.

For "ineffective assistance of counsel claims brought on direct review," we decide the claims "on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as . . . an evidentiary hearing." *State v. Thompson*, 359 N.C. 77, 122-23, 604 S.E.2d 850, 881 (2004) (citation and quotation marks omitted). When we determine such ancillary procedures are needed, "we dismiss those claims without prejudice, allowing defendant to bring them pursuant to a subsequent motion for appropriate relief in the trial court." *Id.* at 123, 604 S.E.2d at 881.

After an evidentiary hearing, "[a] trial court's ruling on a motion for appropriate relief pursuant to G.S. 15A-1415 is subject to review . . . [i]f the time for appeal has expired and no appeal is pending, by writ of certiorari." *State v. Morgan*, 118 N.C. App. 461, 463, 455 S.E.2d 490, 491 (1995) (citation and quotation marks omitted) (modifications in the original). Consequently, we dismiss Defendant's direct appeal, without prejudice, to permit Defendant to pursue a Motion for Appropriate Relief on the issues of his speedy appeal and related ineffective assistance of counsel claims and to develop the facts in the trial court in an evidentiary hearing.

## Conclusion

Accordingly, for the foregoing reasons, we dismiss Defendant's appeal without prejudice to pursue the claims asserted in this appeal through a Motion for Appropriate Relief in the trial court.

DISMISSED.

Judges TYSON and BROOK concur.